# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00670-CV

**Viet Tran, Individually and a/n/f for B.T.; Nham Vo; Paulina Binh Dang; Huu Maui Tri; Thuy Bich Dang; and James Dang, Appellants**

**v.**

**David Ritter, Appellee**

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-003267, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Viet Tran, Individually and as next friend for B.T.; Nham Vo; Paulina Binh Dang; Huu Maui Tri; Thuy Bich Dang; and James Dang (collectively, "the Dang Relatives") appeal from a summary judgment granted in favor of appellee David Ritter. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Lien Dang died February 8, 2021. After her death, Ritter directed Affordable Burial and Cremation Services, LLC, regarding the disposition of her remains.[1] On March 18, 2021, Viet Tran, Dang's son, filed an application for a temporary restraining order and temporary injunction in Travis County District Court. Tran alleged that on February 13, 2021,

---

[1] Ritter and Dang had been in a relationship for approximately ten years when she died, and Ritter represented to Affordable Burial that he was Dang's spouse.

Ritter told him that Dang had died February 8th. Tran alleged that Ritter and Dang were romantically involved, that Dang had been living with Ritter, and that Ritter had, since informing him of Dang's death, prevented Tran and Dang's other relatives from seeing her body. Tran alleged that Ritter had "allowed [Dang's] remains to decompose in his home and ha[d] refused to cooperate with [Dang's] family in coordinating a funeral" consistent with Dang's religious practices. Tran asserted that he sought the court's intervention so that Dang could "be buried in a humane and tasteful manner according to the religious practices of their family." Tran requested that the court issue a temporary restraining order to prevent Ritter from "taking any action that might alter, damage, move, bury, cremate or destroy, in any way" Dang's remains. Tran asserted that any "further decomposition and mishandling of [Dang's] corpse would cause unnecessary emotional distress on her family." Tran also sought a temporary injunction ordering Ritter to deliver Dang's remains to Tran.

The application filed in district court was supported by the affidavit of Adeline Bui, office manager of the Dang Law Group, in which she attested that:

> On February 13, 2021, Mr. Tran received a phone call from Mr. Ritter stating that Ms. Dang died on February 8, 2021. Mr. Tran was distraught and asked where Ms. Dang's body was. Mr. Ritter said she is at a hospital in Houston. Mr. Ritter would not tell Mr. Tran which hospital Ms. Dang was at. Mr. Tran's family tried calling every hospital in Houston looking for Ms. Dang. Mr. Ritter consistently provided Mr. Tran with false information regarding where Ms. Dang's body was.

> Nearly four weeks after Ms. Dang had passed, Mr. Ritter told Ms. Dang's oldest sister, Sister Binh Dang that he would allow her to see Ms. Dang. Sister Dang believed that her sister was still in Houston as Mr. Ritter indicated to Sister Dang. Mr. Ritter told Sister Dang that her sister is currently at his home and that Sister Dang could come by herself and see her sister.

> Sister Dang [] stated that she saw her sister laying [sic] on a table inside Mr. Ritter's home. Sister Dang begged Mr. Ritter to let her family take Ms. Dang's body to be buried as they are devoted Catholics. Mr. Ritter refused Sister Dang's request.

2

A few days later, Mr. Ritter allowed Ms. Dang's daughter to see her body. Mr. Ritter also allowed Ms. Dang's Aunt and Uncle from Arlington to see her body. Mr. Ritter refused to allow Mr. Tran to see Ms. Dang. He made excuses that he was busy or not available. Since Ms. Dang's death in early February, Mr. Tran never saw his mother.

On Sunday, March 14, 2021, the family had a service with Father Francis from the Vietnamese Holy Church without the body. Mr. Ritter found out about the services and called everyone in Ms. Dang's family yelling at them for doing the service without his permission. Mr. Tran fears for his and his family's safety as Mr. Ritter had threatened to hurt his family over the memorial service.

At Ritter's house [on March 16, 2021] the police and Sheriff informed us of what had occurred within the last five weeks from Mr. Ritter's version. Ms. Dang died in the hospital in Houston on February 8, 2021. Mr. Ritter requested for her body to be released to Affordable Funeral and Cremation in Austin to pick up her body. Due to the snow and ice storm in the middle of February Ms. Dang was not picked up until 10 days after she died. Mr. Ritter asked the Funeral home to leave Ms. Dang's body, un-embalmed at his house. Two days after the delivery of the body to Mr. Ritter's home, the Funeral home told Mr. Ritter the body needed to be embalmed otherwise it would decompose at a faster rate due to the weather warming up. Mr. Ritter allowed the embalming, 12 days after Ms. Dang passed away.

Mr. Ritter claimed that he is working to get Ms. Dang's funeral arrangement. He claimed that Ms. Dang was going to be buried next to her father in the family cemetery plot that one of the relatives is supposed to be buried at Cook-Walden Capital Park. Ms. Dang's father is still alive and Mr. Ritter has not made any contact or had any conversation with the plot owner regarding Ms. Dang being buried in the family plot.

Mr. Ritter has lied and misled Ms. Dang's family on several occasions and has prolonged way too long to have Ms. Dang properly buried.

On March 31, 2021, Tran filed a notice of nonsuit without prejudice of his Texas Health and Safety Code claims, stating that "[a]ccording to the Texas Health and Safety Code 711.002, the proper jurisdiction for these types of requests concerning remains of deceased family members are in Probate Court and [Tran], along with the rest of [Dang's] family have decided to pursue their requests there." On April 5, 2021, Tran filed a notice of nonsuit with prejudice of any remaining claims, stating that "[t]his is final and disposes of this action for injunctive relief

3

against David Ritter." Thus, having nonsuited, without prejudice, the claims brought under the Texas Health and Safety Code, Tran then nonsuited, with prejudice, the remaining claims against Ritter arising out of his handling of Dang's remains.

On March 31, 2021, the Dang Relatives filed another application for temporary restraining order and for temporary injunction, this time in Travis County Probate Court. The Dang Relatives alleged that Ritter told Tran that Dang died on February 8, 2021; that Ritter "had produced a document known as an 'Appointment of Agent of Disposition' to have the legal rights to dispose of" Dang's remains; that the document was invalid and not sufficient to deny the Dang Relatives' right of disposition of Dang's remains; and that even if the document was valid, Ritter's rights would have been automatically terminated pursuant to the provisions of Texas Health and Safety Code section 711.002. The Dang relatives asserted that Ritter had prevented them from hiring their own funeral home and having a burial consistent with Dang's religious practices and had concealed the circumstances of Dang's death and the location of her remains. The Dang Relatives alleged that they had not seen a death certificate or received information regarding the location of Dang's remains. They asserted that although they had been told by Affordable Burial and by Ritter's attorney that a burial had taken place at an undisclosed location, they "doubt[ed] whether or not a burial did in fact take place." The Dang Relatives alleged that Ritter had allowed Dang's remains to decompose and that injunctive relief was necessary to permit the Dang Relatives to bury Dang "according to their wishes, her religious beliefs and rights." The Dang Relatives alleged that the document that Ritter used to take control of the disposition of Dang's remains was invalid on its face and, even if it was valid, Ritter's right to control disposition of Dang's remains terminated pursuant to Texas Health and Safety Code section 711.002(a-1). (providing that right to control disposition is terminated if person

4

fails to make final arrangements before earlier of sixth day after receiving notice of decedent's death or tenth day after date of decedent's death). On April 5, 2021, the Dang Relatives filed a notice of nonsuit with prejudice of the probate court proceedings.

In July 2022, the Dang Relatives sued Ritter for the third time, now in Travis County District Court. The Dang Relatives alleged that Dang died in Houston on February 8, 2021, and that Ritter, who claimed to be her boyfriend or common law husband, was with her at the time of her death. The Dang relatives alleged that because Ritter failed to make final arrangements for the disposition of Dang's remains within six days of being notified of her death, his right to control the disposition of Dang's remains had terminated. *See* Tex. Health & Safety Code § 711.002(a-1).

The Dang Relatives further alleged that in the days following Dang's death, they had requested that Ritter disclose the date and place of her death and provide information to them regarding the arrangements for disposition of her remains. The Dang Relatives asserted that Ritter refused to disclose any of that information to them. The Dang Relatives alleged that Ritter, without their knowledge or consent, instructed Affordable Burial to embalm and prepare Dang's remains for entombment and directed Affordable Burial to deliver her remains to Ritter's residence and "to deposit [Dang's] remains on a makeshift altar which he had arranged on his dining room table." The Dang Relatives asserted that they were not aware of and did not consent to Ritter's treatment of Dang's remains and "would not have consented to Ritter's disturbing actions had they been aware." The Dang Relatives alleged:

> Although his right to control the disposition of [Dang's] remains had long terminated as a matter of law, Ritter refused to relinquish possession of [Dang's] remains to her next [of] kin, and instead allowed her remains to decompose on his dining room table for over three (3) weeks.

5

On March 14, 2021, [the Dang Relatives] were forced to hold a funeral service for [Dang] at a Vietnamese Catholic Church in Austin, without [Dang's] remains present at the ceremony.

Ritter unexpectedly appeared at the service. Going beyond all possible bounds of decency, Ritter disrupted the service by shouting and cursing at [the Dang Relatives] in the house of worship where they had sought comfort and peace. Ritter intentionally inflicted severe emotional distress on [the Dang Relatives] at a time and place when he knew they were grieving, distraught, and most vulnerable.

The Dang Relatives alleged that they hired lawyers, moved for a temporary restraining order in district court and in probate court, and requested intervention by law enforcement. The Dang Relatives alleged that on March 16, 2021, Travis County Sheriff's Office personnel entered Ritter's residence and observed Dang's remains, and on March 17, 2021, Ritter instructed Affordable Burial to transport Dang's remains back to its facility. The Dang Relatives alleged that on March 19, 2021, without their knowledge or consent, Ritter instructed Affordable Burial to entomb Dang's remains at Onion Creek Memorial Park in Austin, and that the entombment was done without the Dang Relatives' knowledge, consent, presence, or participation. Based on these events, the Dang Relatives requested actual damages to compensate them for their severe emotional distress proximately caused by Ritter's conduct as well as exemplary damages.

Ritter filed a combined partial plea to the jurisdiction and motion for summary judgment. Ritter argued that he was entitled to summary judgment on all claims because they were barred by res judicata. Ritter also argued that, to the extent the Dang Relatives were asserting a claim for intentional infliction of emotional distress arising out of Ritter's behavior at the funeral service, such a claim failed as a matter of law because, taking the Dang Relatives' allegations as true, his conduct was not sufficiently extreme or outrageous to support a claim of intentional infliction of emotional distress. In his plea to the jurisdiction, Ritter argued that the court did not have subject matter jurisdiction over the Dang Relatives' claims brought pursuant

to Texas Health and Safety Code section 711.002 because those claims fell within the probate court's exclusive jurisdiction. *See* Tex. Health & Safety Code § 711.002(k) (providing that any dispute concerning the right to control disposition of decedent's remains "shall be resolved by a court with jurisdiction over probate proceedings for the decedent"). The Dang Relatives countered, in relevant part, that their claims were not barred by res judicata because they had not previously made a claim for damages in their suits in the Travis County District Court and Probate Court but, rather, had only sought injunctive relief; that the Dang Relatives were not aware of certain facts underlying their claims when they filed suit in Travis County District Court and Probate Court because Ritter and his counsel had concealed them and had "attempted to intimidate and threaten plaintiff's counsel"; and that the Dang Relatives' claims against Ritter were not ripe until, during discovery in a September 2021 suit against Affordable Burial, they discovered facts they alleged proved that Ritter did not have the authority to direct the disposition of Dang's remains.

After a hearing, the trial court signed an order granting Ritter's combined partial plea to the jurisdiction and motion for summary judgment and dismissed all the claims against Ritter. This appeal followed.

## DISCUSSION

We review the granting of a motion for summary judgment de novo.[2] *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). When the trial court does not specify the grounds for

---

[2] The standards for reviewing a summary judgment are well established and undisputed on appeal. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Ford Motor Co. v. Ridgway*,

7

its ruling, summary judgment must be affirmed if any of the grounds on which the judgment was sought are meritorious. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents ($90,235) in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013). A defendant moving for summary judgment on an affirmative defense has the burden to conclusively establish each element of that defense. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021); *see* Tex. R. Civ. P. 94 (identifying res judicata as affirmative defense). Because it is dispositive, we first address whether Dang Relatives' claims against Ritter were barred by res judicata.

Res judicata, broadly speaking, is the generic name for a group of related concepts concerning the preclusive effect of prior judgments. *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Savs.*, 837 S.W.2d 627, 628 (Tex. 1992). "Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Id.*; *American Int'l Indus. v. Scott*, 355 S.W.3d 155, 160 (Tex. App.—Houston [1st Dist.] 2011, no pet.). For res judicata to apply, the following elements must be present: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties in each action; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Citizens Ins. Co. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). This doctrine prohibits splitting a cause of action to "bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Barr*, 837 S.W.2d at 628. "The judgment in the first suit precludes a second action by the parties and their privies on matters actually litigated and on causes of action or defenses arising out of

---

135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166a(c), (i). Accordingly, we need not repeat them here.

8

the same subject matter that might have been litigated in the first suit." *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (citing *Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984)).

Texas courts apply the transactional approach to res judicata, which requires that claims arising out of the same subject matter be litigated in a single lawsuit. *Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 58 (Tex. 2006) (citing *Barr*, 837 S.W.2d at 631). Under this approach, we examine the factual bases, not the legal theories, presented in the cases to determine whether the cases share the same set of operative facts. *Samuel v. Federal Home Loan Mortg. Corp.*, 434 S.W.3d 230, 234 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 496 (Tex. App.—Texarkana 2002, pet. denied)). In determining whether the facts arose out of a single transaction, we consider whether the facts are related in time, space, origin, or motivation and whether they form a convenient unit for trial. *Id.* (citing *Barr*, 837 S.W.2d at 631).

### *Earlier final judgment on the merits*

The Probate Court's dismissal with prejudice of all pending claims in the Probate Court constituted a final judgment on the merits of the Dang Relatives' claims under section 711.002 of the Texas Health and Safety Code by a court of competent jurisdiction. *See Epps v. Fowler*, 351 S.W.3d 862, 864 (Tex. 2011) (nonsuit with prejudice immediately alters legal relationship between parties by its res judicata effect); *Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991) ("[I]t is well established that a dismissal with prejudice functions as a final determination on the merits."); *Christensen v. Chase Bank USA, N.A.*, 304 S.W.3d 548, 553 (Tex. App.—Dallas 2009, pet denied). The District Court's dismissal with prejudice of the

9

remaining claims asserted against Ritter arising out of his handling of Dang's remains constituted a final judgment on the merits of claims that were or could have been raised in that court, including a claim for damages in addition to injunctive relief. *See In re J.G.W.*, 54 S.W.3d 826, 832 (Tex. App.—Texarkana 2001, no pet.) (judgment of dismissal is conclusive on matters actually raised and litigated and on every other matter that could have been litigated and decided as an incident to or essentially connected with subject matter of prior litigation).

### *Identity of parties*

The second element, identity of parties, does not require that the parties in both lawsuits be identical if the parties named in the subsequent action are in privity with a party to the prior judgment—that is, a party who is so connected with a party to the prior judgment that the party represented the same legal right. *See Benson v. Wanda Petroleum Co.*, 468 S.W.2d 261, 363 (Tex. 1971). Here, the plaintiffs and the defendant in the Probate Court case and the present case are the same individuals, thereby satisfying the identity of parties element of res judicata with regard to the claims brought under the Texas Health and Safety Code. Regarding the District Court case, although Tran was the only named plaintiff in that case, we conclude that the remaining plaintiffs in the underlying case, all relatives of Dang asserting the same injury arising out of the same facts and relationship to her, were in privity with Tran such that he represented their interest. *See Traweek v. Larkin*, 708 S.W.2d 942, 945 (Tex. App.—Tyler 1986, writ ref'd n.r.e.) (determination of privity requires an examination of circumstances of each case to determine whether party to prior action represented party's interest).

10

*Second action based on claims that were, or could have been, raised in first action*

As previously described, the Dang Relatives' claims in the underlying proceeding are based on the same allegations and events that were made in both the Probate Court case and the District Court case, namely that Ritter directed the disposition of Dang's remains without authority; in disregard of her religious practices; and unbeknownst to her family members and in a manner that they objected to, causing them emotional distress. The claims that the Dang Relatives have brought against Ritter in this suit could have been raised and litigated in either the Probate Court case or the District Court case. Although they claim to have learned additional facts in subsequent litigation with Affordable Burial, the allegations and supporting affidavits demonstrate that they were aware of the facts underlying their present claims. Moreover, the fact that their previous suits were limited to injunctive relief is not germane to the res judicata analysis, which directs us to examine the factual bases, not the legal theories, presented in the cases to determine whether they share the same set of operative facts. *See Samuel*, 434 S.W.3d at 234. Here, they plainly do. The principles underlying the doctrine of res judicata are consistent with precluding this subsequent suit against Ritter and concerning the same subject matter and claims that were, or could have been, raised in the Probate Court case and the District Court case. *See Barr*, 837 S.W.2d at 628 (doctrine of res judicata not only prevents relitigation of claims that have been finally adjudicated, but also of related matters that should have been adjudicated in the first proceeding because they are part of same claim or cause of action).

## CONCLUSION

For the foregoing reasons, we conclude that Ritter established the elements of his affirmative defense of res judicata and that the trial court properly granted summary judgment on

11

all claims against him on that ground.  We therefore affirm the trial court's order dismissing the Dang Relatives' claims against Ritter without considering the propriety of summary judgment on any other basis.  *See* Tex. R. App. P. 47.1.

_____

Thomas J. Baker, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed:  June 21, 2024